UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: EDWARD L. HENDERSON and
ANDREA L. HENDERSON,

No. 7-15-10325 JA

Debtors.

EDWARD L. HENDERSON and
ANDREA L. HENDERSON,

Plaintiffs,

v.

Adversary No. 16-1032 J

ERIC WHITE and MALISSA WHITE,

Defendants.

## MEMORANDUM OPINION

THIS MATTER is before the Court on the Defendants' Motion and Brief in Support of Summary Judgment on Amended Complaint for Violation of the Automatic Stay and Discharge; And Petition for Temporary Restraining Order Injunction, Sanctions, Civil Contempt, and Attorneys['] Fees and Costs for Willful Violation of Discharge Injunction ("Motion for Summary Judgment"). *See* Docket Nos. 5 and 6. Because the facts not subject to genuine dispute establish that the Plaintiffs entered into the lease underlying their claims in this adversary proceeding *after* Plaintiffs filed a voluntary Chapter 7 bankruptcy petition, Defendants are entitled to summary judgment determining that Defendants' actions in enforcing the post-petition lease neither violated the automatic stay nor the discharge injunction.

PROCEDURAL HISTORY

This adversary proceeding is the second adversary proceeding Edward L. Henderson and Andrea L. Henderson (together, the Hendersons) have filed against Eric White and Malissa White (together, the Whites) asserting the same claims based on the same underlying facts. *See*

Adversary Proceeding No.15-1076 J ("First Adversary Proceeding"). The Court dismissed the First Adversary Proceeding, without prejudice, due to the Hendersons' failure to timely file an amended complaint. *See* First Adversary Proceeding – Docket Nos. 13. The Hendersons initiated this adversary proceeding on May 18, 2016 by filing an Amended Complaint for Violation of the Automatic Stay and Discharge; and Petition for Temporary Restraining Order, Injunction, Sanctions, Civil Contempt, and Attorney's Fees and Costs for Willful Violation of Discharge Injunction ("Complaint"). *See* Docket No. 1.

The Whites filed the Motion for Summary Judgment on June 9, 2016. *See* Docket Nos. 5 and 6. The Hendersons requested an enlargement of the time within which to file a response to the Motion for Summary Judgment. *See* Docket No. 7. The Whites objected. *See* Docket No. 9. Following a hearing on the Hendersons' request for enlargement of time, the Court extended the deadline for the Hendersons to file a response to the Motion for Summary Judgment through July 12, 2016. *See* Docket No. 13. The Hendersons missed the July 12, 2016 deadline. The next day, July 13, 2016, the Hendersons filed a motion requesting a one-day extension of the time to file a response to the pending Motion for Summary Judgment ("Second Extension Motion"). *See* Docket No. 14. The Hendersons attached to the Second Extension Motion a copy of their proposed response to the Motion for Summary Judgment. The Court denied the Hendersons' Second Extension Motion. *See* Docket No. 15. The Court further ruled that it would not consider the Hendersons' response in ruling on the Motion for Summary Judgment. *Id.*

SUMMARY JUDGMENT STANDARDS

Summary judgment can streamline litigation and avoid the unnecessary expense of proceeding to trial. *See Farnell v. Albuquerque Publ'g Co.,* 589 F.2d 497, 502 (10th Cir. 1978) ("[S]ummary judgment is a useful tool which may avoid needless trials.") (citation omitted);

*Mitchell v. Zia Park, LLC,* 842 F.Supp.2d 1316, 1321 (D.N.M. 2012) ("Principal purposes of summary judgment include streamlining litigation and saving needless time and expense by isolating and disposing of purely legal issues and factually unsupported claims and defenses.") (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (remaining citation omitted)). The Court will grant summary judgment in accordance with Fed.R.Civ.P. 56 when the moving party demonstrates that there is no genuine dispute as to a material fact and that the movant is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a), made applicable to adversary proceedings by Fed.R.Bankr.P. 7056. "[A] party seeking summary judgment always bears the initial responsibility of informing the . . . court of the basis for its motion, and . . . [must] demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323.

Even if the non-moving party does not file a response, the Court must satisfy itself that the movant's properly supported facts entitle the movant to judgment as a matter of law before the Court will grant summary judgment. *See Reed v. Bennett,* 312 F.3d 1190, 1194-95 (10th Cir. 2002) (explaining that the burden on the non-moving party to respond to a motion for summary judgment arises only if the motion is properly supported, and stating further, that "[i]f the nonmoving party fails to respond, the district court may not grant the motion [for summary judgment] without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law."). In evaluating a request for summary judgment, the Court will consider the factual record and make all reasonable inferences therefrom in the light most favorable to the non-moving party. *Wolf v. Prudential Ins. Co. of America*, 50 F.3d 793, 796 (10th Cir. 1995) (summary judgment requires the Court to "'examine

3

the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'") (quoting *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F2d 1238, 1241 (10th Cir. 1990)).

FACTS NOT SUBJECT TO GENUINE DISPUTE

The following facts are not subject to genuine dispute:

1. The Hendersons filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 13, 2015 as Case No. 7-15-10325 JA (the "Chapter 7 Case").

2. Schedule G – Executory Contracts and Unexpired Leases filed in the Hendersons' Chapter 7 Case on March 15, 2015 identifies a commercial lease with Sedona LLC.

3. The Hendersons did not list a lease with the Whites on Schedule G.

4. The Hendersons never amended Schedule G to add any other leases.

5. The Whites leased to the Hendersons certain real property located at 5 Teypana Dr., Tijeras, New Mexico 87059 (the "Property").

6. On February 13, 2012, the Whites and the Hendersons entered into a one-year lease agreement for the Property.

7. On February 13, 2013, the Whites and the Hendersons entered into another one-year lease agreement for the Property.

8. On March 6, 2015, the Whites and the Hendersons entered into a written lease agreement for the Property entitled, "Extension of Lease Agreement." *See* Motion for Summary Judgment - Exhibit D.

9. The Extension of Lease Agreement provides:

> Extension of Lease Agreement made by and between Eric & Malissa White, (Landlord), and Ed & Andrea Henderson, (Tenant), relative to a certain lease agreement for premises known as:

4

>   5 Teypana Dr.
>   Tijeras, Bernalillo NM 87059
>
>   Dated: March 6, 2015 (year).
>
>   Exhibit D.

10. The Extension of Lease Agreement further provides that it extends the term of a lease dated March 6, 2015 for a three-month period commencing April 15, 2015 and terminating on July 15, 2015, "with no further right of renewal or extension beyond said termination date." *Id.*

11. The rent under the Extension of Lease Agreement is $2,200 per month, "payable in advance." *Id.*

12. The Hendersons and the Whites signed the Extension of Lease Agreement on March 6, 2015. *Id.*

13. The Hendersons did not pay rent to the Whites under the Extension of Lease Agreement for the month of July 2015.

14. On July 21, 2015, the Whites filed a pro se civil complaint in Bernalillo County Metropolitan Court against the Hendersons for nonpayment of rent (the "Metro-Court Action")

15. The Whites amended their complaint in the Metro-Court Action on August 19, 2015.

16. The Hendersons filed the First Adversary Proceeding on October 21, 2015.

17. The Court entered an order in the First Adversary Proceeding which provided, in part:

>   If the Lease was entered into post-petition, the Whites may proceed in the State Court action to enforce their rights under the Lease without the need to seek and obtain stay relief in this Court.
>
>   *See* Order on Emergency Motion to Enforce the Automatic Stay and Discharge; Petition for Temporary Restraining Order, Injunction, Sanctions, Civil Contempt,

and Attorney's Fees and Costs for Willful Violation of Discharge Injunction - Exhibit E.

18. On November 9, 2015, the Metropolitan Court Judge entered an order in the Metro-Court Action determining that the automatic stay did not apply. *See* Order on Motion for determination that Automatic Bankruptcy Stay Does Not Apply – Exhibit F.

DISCUSSION

Upon the filing of a voluntary petition for relief, 11 U.S.C. § 362(a) operates as a self-executing, automatic stay. *See* 11 U.S.C. § 362(a) ("a petition filed under section 301 . . . of this title . . . operates as a stay . . ."); *In re Gruntz,* 202 F.3d 1074, 1081 (9th Cir. 2000) ("The automatic stay is self-executing, effective upon the filing of the bankruptcy petition.") (citations omitted).[1] Its scope is very broad,[2] and includes the stay of any "action or proceeding against the debtor that . . . could have been commenced before the commencement of the case[,]" and "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1) and (6). But the language of § 362(a) prohibits only proceedings and collection efforts that affect property of the bankruptcy estate or that attempt to collect pre-petition debts. *In re Baetz,* 493 B.R. 228, 235 (Bankr.D.Colo. 2013) ("The language of 362(a), however, prohibits only proceedings and collection activity that attempts to collect a *pre-petition* debt.") (emphasis in original); 11 U.S.C. § 362(a)(3) (property of the estate). *See also, Leonard v. Fitzhugh,* 2015 WL 3826712, *5 (D.Colo. June 19, 2015) (recognizing that "the Bankruptcy Code does not stay judicial proceedings that could not have been commenced prior

---

[1] *See also, In re Sullivan,* 357 B.R. 847, 853 (Bankr.D.Colo. 2006) ("The filing of a bankruptcy petition imposes the automatic stay, pursuant to § 362 of the Bankruptcy Code.").
[2] *Fletcher v. Deerman (In re Deerman),* 482 B.R. 344, 354 (Bankr.D.N.M. 2012). *See also, In re Gindi,* 642 F.3d 865, 870 (10th Cir. 2011), *overruled on other grounds by TW Telecom Holdings, Inc. v. Carolina Internet, Ltd.,* 661 F.3d 495 (10th Cir. 2011) (observing that the stay encompasses "'almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate.'") (quoting 3 Collier on Bankruptcy ¶ 362.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010)).

6

to the bankruptcy petition, or proceedings to recover a claim against the debtor that did not arise before the commencement of the bankruptcy case.") (citations omitted).  Thus, the automatic stay "does not prevent the commencement of a lawsuit to collect a post-petition debt." *Montclair Prop. Owners Ass'n, Inc. v. Reynard (In re Reynard),* 250 B.R. 241, 244 (Bankr.E.D.Va. 2000) (citations omitted).

Once the debtor receives a Chapter 7 discharge, the discharge injunction, found in 11 U.S.C. § 524, takes the place of the automatic stay.  *See Baetz,* 493 B.R. at 234 ("At the conclusion of the typical chapter 7 case, the automatic stay is replaced by the discharge injunction set forth in § 524.").  The Chapter 7 discharge injunction "prohibits actions brought to collect a discharged debt from the debtor[.]"  *In re Paul,* 534 F.3d 1303, 1307 (10th Cir. 2008). *See also,* 11 U.S.C. § 524(a)(2) ("A discharge . . . operates as an injunction against the commencement or continuation of an action . . . to collect . . . any such debt as a personal liability of the debtor").    Similar to the automatic stay, the Chapter 7 discharge injunction applies to attempts to collect *pre-petition* debts.  *See In re Kuehn,* 563 F.3d 289, 291 (7th Cir. 2009) ("Sections 362(a) [automatic stay] and 524(a)(2) [discharge injunction] apply only when a creditor acts to *collect* a pre-petition or discharged debt.") (emphasis in original); *Baetz,* 493 B.R. at 234 (observing that "[t]he discharge injunction eliminates the debtor's personal liability for the pre-petition debt owed to the creditor . . .").

On summary judgment, the Whites contend that all pre-petition leases with the Hendersons for the Property had expired before the commencement of the Hendersons' bankruptcy case; that the Extension of Lease Agreement is a separate, post-petition lease; and that their post-petition efforts to enforce the Extension of Lease Agreement are an attempt to collect rent due *after* the Hendersons filed their Chapter 7 bankruptcy case.  The Whites

7

consequently reason that their actions cannot violate the automatic stay or the discharge injunction.

> *Whether the facts not subject to genuine dispute establish that the Extension of Lease Agreement is a Separate, Post-Petition Lease*

Before entering into the Lease Extension Agreement, the Whites leased the Property to the Hendersons under a lease dated February 12, 2012, and under a lease dated February 12, 2013. If either of these leases remained in effect as of the date the Hendersons filed their bankruptcy case, the Hendersons' interest in those leases would have become property of the bankruptcy estate, subject to the automatic stay. *See Baetz,* 493 B.R. at 235 (debtors' interest in unexpired pre-petition residential lease becomes property of the bankruptcy estate); 11 U.S.C. § 362(a)(2) and (3) (stay provisions protecting property of the bankruptcy estate).

The Extension of Lease Agreement is a form document containing blanks that the parties filled in by hand. Its title suggests that it extends an existing lease. The printed form language of the agreement provides that "all other terms of the Lease shall continue during this extended term as if set forth herein." Unless the Extension of Lease Agreement extended an existing lease, there would be no other lease terms to incorporate by reference. In addition, the Extension of Lease Agreement extends the term of the lease for three months commencing April1 5, 2015, suggesting that the previous term ended April 14, 2015.

On the other hand, the only dates contained in the Extension of Lease Agreement are dates *after* the date of the filing of the Hendersons' bankruptcy case. The March 6, 2015 date in the first paragraph of the Extension of Lease Agreement refers to the date of the lease that is being extended, although it is possible that the parties mistakenly filled in the date of the Extension of Lease Agreement itself – it is the same as the date contained in the signature blocks.

However, the Hendersons did not list any lease relating to the Property on Schedule G

8

filed with their bankruptcy petition, which requires that they list all unexpired leases existing as of the commencement of the bankruptcy case on February 13, 2015.  Nor did they later amend Schedule G.  "'Statements in bankruptcy schedules are executed under penalty of perjury and when offered against a debtor are eligible for treatment as judicial admissions.'" *In re Morreale,* 2015 WL 3897796, *8 (Bankr.D.Colo. June 22, 2015) (quoting *In re Bohrer,* 266 B.R. 200, 201 (N.D.Cal. 2001)).[3]  The Hendersons' omission of any lease for the Property on Schedule G constitutes an admission that no lease for the Property was in effect as of the petition date.  *Cf., In re Keen,* 2014 WL 6871867, *8, n.6 (Bankr.W.D.Va. Dec. 3, 2014) (stating that "it is well established that statements contained in the schedules of a bankruptcy debtor can constitute binding admissions of the factual matters set forth in the schedules, especially when they have not been amended.") (citation omitted).  Therefore, no leasehold interest in the Property became property of the bankruptcy estate.

In support of the Whites' contention that the Extension of Lease Agreement is a separate, independent, post-petition lease agreement, the Whites have offered their own affidavit testimony stating that all other pre-petition leases had expired before the filing of the Hendersons' Chapter 7 case.  *See* Affidavit of Eric White – Exhibit B, ¶¶ 4, 5, and 6; Affidavit of Malissa White - Exhibit C, ¶¶ 4, 5, and 6.  The Whites did not attach to their affidavits copies of either of the two leases they contend expired pre-petition.  Conclusory, self-serving affidavit testimony, absent specific supporting facts, lacks probative value.  *See Ellis v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1201 (10th Cir. 2015) (stating that "[a]ffidavits must contain certain indicia of reliability" and observing further that "'[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings'") (quoting *Bones v. Honeywell Int'l, Inc.,*

---

[3] *See also, In re Forest Hill Funeral Home & Mem'l Park-East, LLC,* 364 B.R. 808, 818 (Bankr.E.D.Okla. 2007) (bankruptcy court treated the statements contained in the debtor's schedules as admissions by the debtor).

9

366 F.3d 869, 875 (10th Cir. 2004) (citation omitted)).[4] *See also,* 10A Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 2722 (3d ed. 1998) ("[A]ffidavits that purport to describe a document's substance or an interpretation of its contents are insufficient. . . . to prove the terms of the agreements unless sworn or certified copies of [the agreements] are attached to the affidavit."). The Whites' deficient affidavit testimony is not, however, the only evidence in the record indicating that no pre-petition leases for the Property existed as of the petition date.

The Hendersons' failure to schedule any unexpired lease with the Whites in their Schedule G is additional evidence that no pre-petition lease for the Property was in effect as of the petition date. The Hendersons' admission, together with the Whites' affidavit testimony, establish the absence of any genuine issue of material fact regarding the non-existence of an unexpired, pre-petition lease for the Property. The absence of an unexpired, pre-petition lease for the Property necessarily establishes further that the Extension of Lease Agreement constitutes a separate, post-petition agreement to lease the Property and does not extend the term of an unexpired, pre-petition lease.

Based on these facts, the Whites are entitled to summary judgment. The undisputed facts demonstrate that the Hendersons had no interest in the Property as of the petition date subject to the automatic stay. The Whites' actions in the State Court Action seeking to enforce the post-petition Extension of Lease Agreement could not, as a matter of law, have violated the automatic stay or the discharge injunction. Having granted summary judgment on this basis, the Court

---

[4] *See also Harris v. Beneficial Oklahoma, Inc. (In re Harris),* 209 B.R. 990, 997 (10th Cir. BAP 1997) ("an affidavit containing conclusionary allegations without specific supporting facts lacks probative value.") (citing *Thomas v. Int'l Bus. Machs.,* 48 F.3d 478, 485 (10th Cir. 1995)); *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 925 (7th Cir. 2004) ("self-serving statements in affidavits *without factual support in the record* carry no weight on summary judgment.") (citation omitted) (emphasis in original).

10

need not address the Whites' alternative argument that the *Rooker-Feldman* doctrine[5] prevents this Court from determining whether a violation of the automatic stay or the discharge injunction has occurred.

      The Court will enter a separate order and judgment consistent with this Memorandum Opinion.

                                                        _____
                                                    ROBERT H. JACOBVITZ
                                                   United States Bankruptcy Judge

Date entered on docket:    October 11, 2016

COPY TO:

James T. Burns
Attorney for Plaintiffs
Albuquerque Business Law, P.C.
1801-B Rio Grande Blvd NW
Albuquerque, NM 87104

Denise J Trujillo
Attorney for Defendants
Giddens, Gatton & Jacobus, P.C.
10400 Academy Rd NE Ste 350
Albuquerque, NM 87111

---

[5] "The *Rooker-Feldman* doctrine precludes a losing party in state court who complains of injury by the state-court judgment from bringing a case seeking review and rejection of that judgment in federal court." *In re Miller,* 666 F.3d 1255, 1261 (10th Cir. 2012) (citing *Exxon Mobil Corp. v. Saudi Basic Indus., Corp.,* 544 U.S. 280, 291-92, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005)).